[No. 10082. Department Two. April 10, 1912.]

AUGUST E. FISCHER, *Respondent*, v. CLARENCE D. HILLMAN et al., *Appellants*.

ALBERT E. STAATS, *Respondent*, v. CLARENCE D. HILLMAN et al., *Appellants*.[1]

VENDOR AND PURCHASER—FRAUD OF VENDOR—RESCISSION BY VENDEE —DILIGENCE. The vendee is not precluded from rescinding a contract for land for fraud merely because he might have ascertained the falsity of the representations concerning matters of fact, made by crafty and designing vendors, who resorted to cunning artifice to deceive and rob simple-minded people.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered September 2, 1911, upon findings in favor of the plaintiffs, in actions by vendees for the rescission of land contracts. Affirmed.

*Fred'k R. Burch* and *Oliver Hulbach*, for appellants.

*James A. Snoddy*, for respondents.

DUNBAR, C. J.—These two actions were brought by the respondents severally and separately, to rescind a contract for the purchase of lands, and were afterwards, for convenience sake and for economy, joined and tried together. In what may be termed the *Fischer* case, the complaint, after setting up the interest of Clarence D. Hillman and his relation to the C. D. Hillman's Snohomish County Land & Railroad Company, matters concerning which there seems to be no real controversy, alleges that Clarence D. Hillman represented and claimed that he owned and had a perfect title to

[1]Reported in 122 Pac. 1016.

certain lands described in the complaint; that said lands were free and clear of any and all liens and incumbrances; that there were no outstanding claims to them or interest therein; that Hillman also represented that he was going to cause to be constructed, in close proximity to said lands, an electric interurban railway, extending from Everett, in the county of Snohomish, to Bellingham, in the county of Whatcom; represented and promised that he would cause to. be constructed a good wagon road from said lands to the town of English, in the county of Snohomish; and in connection with such representations and promises, offered said lands for sale to plaintiff, and by and through said representations and promises, sought to induce plaintiff to purchase the same; in addition thereto, promising and agreeing that, if plaintiff would purchase said lands, Hillman would furnish to plaintiff an abstract showing such title as he claimed and represented that he had, and that he would at once proceed to do the various things which it was represented by him he was going to do and which he promised to do; that there were situated upon the lands certain buildings with certain furniture and fixtures therein, which the defendant Hillman claimed and represented that he owned and would sell with the land upon which they were located; that the defendant Hillman then represented that such lands were known as lots 2, 3, 4, 13, and 14, in block 109, and lots 5, 6, 7, and 8, in block 110, of C. D. Hillman's Birmingham Water Front addition to the City of Everett, Division No. 3; that a plat of said division and addition was of record in the office of the auditor of Snohomish county; that Hillman offered the lands to plaintiff for the sum of $1,600, and the buildings and furniture and fixtures therein for an additional $100; that plaintiff, relying upon the representations and promises of Hillman, and believing the same to be true and that Hillman would do all that he represented and promised that he would do, agreed to purchase the lands shown to him and represented to be technically known as hereinbefore stated; and on or

about the 20th day of November, 1909, paid Hillman the sum of $1,700, and said Hillman caused to be executed and delivered to plaintiff a purported deed to the same (a copy of which deed is set forth in the complaint), and upon the delivery of said deed, promised plaintiff that he would furnish the abstract theretofore promised within the course of a few days; that relying upon the representations aforesaid, plaintiff entered upon said lands and commenced and made various improvements thereon, which were reasonably worth the sum of $1,535.

The plaintiff alleges that none of the representations made by Hillman as inducements to plaintiff to purchase the lands were true when made, nor have they since transpired; that neither the said Clarence D. Hillman nor the said C. D. Hillman's Snohomish County Land & Railroad Company, at the time said representations were made, was the owner of said lands free and clear of liens and incumbrances, or free and clear of outstanding claims and interests; or were they the owners of the buildings upon the lands, nor the furniture or furnishings therein; but on the contrary they were owned by the Lake Goodwin Shingle Mill Company, and are now owned by it; that neither said Hillman nor the C. D. Hillman's Snohomish County Land & Railroad Company owned or has a title to said lands, free and clear of liens and incumbrances or outstanding interests; that at no time was there or is there now of record in the office of the county auditor of the county of Snohomish any plat showing or containing a third subdivision of C. D. Hillman's Birmingham Water Front addition to the City of Everett, and that the purported deed hereinbefore set forth, given to this plaintiff upon his payment of said sum of $1,700 in cash to said Hillman, does not describe any land in the county of Snohomish, or elsewhere, susceptible of identification, and has no value to this plaintiff as muniment of title; alleges that neither said Hillman nor the said C. D. Hillman's Snohomish County Land & Railroad Company, nor any one else, has

built or caused to be built any electric railroad in close prox-
imity to said lands, or built any road from said lands to the
town of English, nor have they made any improvements prom-
ised plaintiff by them that they would make, nor have they
ever given or furnished to this plaintiff any abstract of title
showing a good title in fee in the said Hillman nor the said
C. D. Hillman's Snohomish County Land & Railroad Com-
pany, free and clear of all incumbrances; nor have they
given or furnished to this plaintiff any abstract of title what-
soever, although during the time since the said 20th day of
November, 1909, they have often been requested so to do.
And plaintiff alleges that, at the time Hillman made such
representations and promises with respect to title and with
regard to the intended and promised improvements, said rep-
resentations and promises were false, and were known by the
said Hillman to be false and untrue.

The complaint alleges certain expenses incurred by plain-
tiff for the purpose of obtaining title to the land, and the dis-
covery by the plaintiff that the representations made by Hill-
man as to title were false and untrue; alleged the discovery
that there was no plat of the third addition of C. D. Hill-
man's Birmingham Water Front addition to the City of
Everett; that the lands had been located in another division
than that described, and that they discovered that the de-
fendants did not own the buildings or furniture which they
represented to the plaintiff that they· did own; that imme-
diately upon making such discoveries, plaintiff gave notice
to the defendants of his rescission of the pretended purchase,
and tendered to them a good and sufficient deed of reconvey-
ance, containing an exact description of the land described in
the deed which had been furnished him, and his surrender of
the possession of said lands together with the buildings
thereon, furniture, and equipment, etc., and demanded of
them the return to this plaintiff of the amount paid, together
with the expenses incurred by the plaintiff; and plaintiff

continued the tender and made it good in court, and prayed for a judgment for $3,247 against the defendants Clarence D. Hillman and C. D. Hillman's Snohomish County Land & Railroad Company.

Demurrer was interposed to this complaint which was overruled by the court. The defendants interposed an answer, admitting certain things and denying others, and the cause went to trial. The court, after a view of the premises, decreed that the contract of purchase be rescinded and annulled, and that the plaintiff recover of the defendants $2,281, together with the costs and expenses of this action. What is said in relation to this case applies with equal force to the companion case of *Staats v. Hillman*, so that we will not discuss them separately.

It is earnestly contended by appellants that the demurrers to these complaints should have been sustained; that the plaintiff was in a position to ascertain the truthfulness of the statements and representations made by the defendants; that there was no fiduciary relation existing, and that it was the plaintiff's duty to ascertain the truth or falsity of said statements, and many cases are cited to sustain this rule. It may be admitted that some of the earlier cases decided by this court, notably the case of *Washington Cent. Imp. Co. v. Newlands*, 11 Wash. 212, 39 Pac. 366, laid down a rule that gives color at least to appellants' contention, and that the language used was broad enough to sustain such contention. But that rule has been mitigated by the later decisions of this court, and, as we view it now, was probably not fully justified by the authorities extant at the time it was announced. It has been supplanted by the more reasonable and humane rule that a party will not be allowed to shield himself because the party with whom he was dealing was careless or too confiding, and that, while the state cannot stand *in loco parentis* to all its citizens, the crafty and designing will not be allowed, by cunning artifice tending to deceive the simple minded, to rob them of what justly belongs to them.

This doctrine was announced in *Wooddy v. Benton Water Co.*, 54 Wash. 124, 102 Pac. 1054, 132 Am. St. 1102, where it was said:

"Nor can we agree with the court below that the doctrine of *caveat emptor* applies to the representations made by the respondents to the effect that the entire tract was under the level of the canal and susceptible of irrigation therefrom. Strong language has been used by this and other courts in defining the duties of purchasers from which it might be inferred that vendors have an unbridled license to lie and deceive, but such has never been the law, and the tendency of the more recent cases has been to restrict rather than extend the doctrine of *caveat emptor.*"

The court then quotes from *Strand v. Griffith*, 97 Fed. 854, where it was said:

"There is no rule of law which requires men in their business transactions to act upon the presumption that all men are knaves and liars, and which declares them guilty of negligence and refuses them redress, whenever they fail to act upon that presumption. The fraudulent vendor cannot escape from liability by asking the law to applaud his fraud and condemn his victim for his credulity. 'No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool;' "

and citing *Noyes v. Belding*, 5 S. D. 603, 59 N. W. 1069, where the court said:

"The unmistakable drift is toward the doctrine that the wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of his victim;"

and 14 Am. & Eng. Ency. Law (2d ed.), pp. 120, 121, where it is said:

"By the overwhelming weight of authority, ordinary prudence and diligence do not require a person to test the truth of representations made to him by another as of his own knowledge, and with the intention that they shall be acted upon, if the facts are peculiarly within the other party's knowledge or means of knowledge, though they are not exclusively so, and though the party to whom the representations are made may have an opportunity of ascertaining the

truth for himself.    By the weight of authority, and in reason the rule that a person who is voluntarily blind as to facts concerning which false representations are made cannot complain of the same, applies only where the parties have equal present opportunity and means to ascertain the truth at the time of the transaction, and does not apply merely because it is possible to ascertain the facts.    Indeed, it has been held that a person is justified in relying on a representation made to him, in all cases where the representation is a positive statement of fact, and where an investigation would be required to discover the truth."

The doctrine here announced has been affirmed many times by this court:    *McMullen v. Rousseau,* 40 Wash. 497, 82 Pac. 883; *Lindsay v. Davidson,* 57 Wash. 517, 107 Pac. 514; *Bailie v. Parker,* 56 Wash. 353, 105 Pac. 834; *Best v. Offield,* 59 Wash. 466, 110 Pac. 17, 30 L. R. A. (N. S.) 55; *West v. Carter,* 54 Wash. 236, 103 Pac. 21; *Godfrey v. Olson, ante* p. 59, 122 Pac. 1014; and *McMillen v. Hillman,* 66 Wash. 27, 118 Pac. 903.    It must be borne in mind that these were not simply the expressions of opinion made by the vendee, wherein another rule obtains, but were statements of fact which were relied upon as facts by the purchaser.    The demurrers were properly overruled, and the trial of the cause upon its merits justified the decree rendered by the court.    The defendants in this case were, to say the least, smooth, experienced real estate men, who resorted to extreme measures to sell the lands offered.    Excursions were promoted and clackers employed to harangue the credulous and unsuspecting, while the purchasers in these particular cases were men of simple habits and thought, seafaring men who had spent their lives at sea and were not mentally equipped to withstand the blandishments which were brought to bear upon them.

The judgment is affirmed.

Mount, Morris, Fullerton, and Ellis, JJ., concur.