[No. 37218. Department One. June 18, 1964.]

PETER BOONSTRA, *Respondent*, v. STEVENS-NORTON, INC., *Appellant*.*

*Dimmick, Sampson & Savage,* by *Theodore E. Sampson,* for appellant.

*Melville Oseran* (of *Robbins, Oseran & Robbins*), for respondent.

*Reported in 393 P. (2d) 287.

EDGERTON, J.[†]—Peter Boonstra, respondent, sued Stevens-Norton, Inc., appellant, to recover $5,500 which he had deposited with appellant for loan to third parties. Boonstra sought repayment of the sum on claims he had been induced by fraud to loan the money and that there had been a breach of warranty. The trial court held he was entitled to recover on both grounds and awarded him judgment.

Appellant avers the trial court erred in its findings of fact, conclusions of law and judgment.

Boonstra, 29 years old at the time of trial, had come to the United States from the Netherlands when he was 15. He had had the equivalent of an eighth grade education but could neither speak nor understand English. He worked as a farm hand at Everson, Washington, except for a stint in the American armed services during part of 1953 and 1954, until he moved to Seattle in 1957. There he completed a high school course, and, when the case was tried, he was employed by the Boeing Company as an expediter at a salary of about $400 a month.

Stevens-Norton, Inc., incorporated about 1945, but its business antecedents date back to 1933. Its principal business has been the procurement and sale of real estate contracts and mortgages. In the transaction here in question, all respondent's dealings were with Larry L. Stevens, vice-president of appellant corporation for about 6 or 7 years and a realtor.

Attracted by appellant's advertisement in the classified section of a newspaper, Boonstra contacted Stevens and discussed various offerings of the company. He told Stevens his background, his lack of experience in real estate matters, that over the years he had saved some money (which savings were in the Boeing Credit Union), that he desired a higher rate of interest and wished to invest in real estate. (Appellant's advertisement promised a 10 per cent return from its offerings.) Boonstra also insisted on having safety and security in any investment, and let Stevens know he relied on his advice concerning

†Judge Edgerton is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

any investment he might make. Stevens suggested appellant could provide a $5,500 mortgage on a motel property on U. S. Highway 99, south of Seattle, to be given by a Mr. and Mrs. Robert A. Brue. To Boonstra's query, was the loan safe, Stevens assured him it was, that it was secured by a mortgage on the motel property, which motel would belong to Boonstra if the Brues did not make the required payments. Relying on these assurances, Boonstra paid Stevens-Norton $5,500 and was given a receipt that included a description of the property and the following language:

"The above described property is to be conveyed free and clear of all encumbrances, except easements and restrictions and reservations as of record, if any, unless otherwise stated."

On the same date as the receipt, a note for $5,500 and an instrument entitled Purchaser's Assignment of Contract and Deed were executed by the Brues to Boonstra. The latter paper stated, "This assignment is given as security for the payment of a note of even date in the amount of Five Thousand Five Hundred Dollars. ($5500.00)." Except for the receipt which was delivered to Boonstra, all documents connected with the transaction, the note, assignment and title reports were retained by Stevens-Norton and were neither delivered nor shown to Boonstra.

The real status of the property was disclosed in a title report in appellant's possession at the time of the loan negotiations. From this source, appellant knew that the Brues' only interest in the motel property was that of contract vendee, only $29,000 had been paid on the original purchase price of $156,750, real estate taxes were delinquent for 2 years, the Brues had executed a prior $10,000 mortgage, and there was a $1,070.47 federal tax lien against them. This title report was not shown to respondent and Stevens did not apprise Boonstra of the facts it supplied. He was not told that, if the Brues defaulted, an expenditure of over $100,000 might be necesssary to protect his investment. Appellant knew respondent could not raise such sum, due to his limited resources.

Later Boonstra did receive one semi-annual interest payment, but, in December of 1960, he was joined as a defendant in an action by the conditional sales vendors of the property to cancel and forfeit the real estate contract under which the Brues were purchasing the property. A decree of forfeiture was entered against all the defendants and then the Brues, listing respondent as a creditor, were adjudicated bankrupt and discharged on February 14, 1961.

The foregoing recital outlines generally the facts found by the trial court. They are amply sustained by the evidence.

In challenging the court's findings of fact, appellant argues that Stevens told Boonstra all relevant facts concerning the transaction. However, this assertion was based only on testimony as to what was his office practice rather than upon any specific and independent recollection of what he actually told respondent. The contention is without merit.

Appellant also contends that the nine requisite elements to establish fraud are not proved by clear, cogent and convincing evidence as required by *Graff v. Geisel,* 39 Wn. (2d) 131, 234 P. (2d) 884. However, study of the facts proved shows all nine essentials to be present.

■ When Stevens told Boonstra that this investment was a safe loan, he represented an existing fact. It was false, for he knew the investment was dangerously unsafe from documentary evidence that showed the existence of delinquent taxes, a prior mortgage, and a very weak financial position of the borrowers. Concealment of these facts from the customer, who he knew relied on his judgment and probity, was equivalent to a representation of an existing fact.

In some circumstances, the statement that the loan was safe might be mere salesmanship, puffing, or opinion, but when coupled with a withholding of known facts that would prove the converse, it is a statement of existing fact. The facts withheld were obviously material. The nature of the Brues' interest in the property was material. The statements made and the information withheld were

for the purpose of inducing the respondent to make the loan. Under these circumstances, where appellant kept respondent in ignorance of the true situation, respondent justifiably relied on appellant to advise him honestly.

On the subject of withholding material information, this court quoted in *Oates v. Taylor,* 31 Wn. (2d) 898, 199 P. (2d) 924:

" 'It is well settled that the suppression of a material fact which a party is bound in good faith to disclose is equivalent to a false representation. Where the law imposes a duty on one party to disclose all material facts known to him and not known to the other, silence or concealment in violation of this duty with intent to deceive will amount to fraud as being a deliberate suppression of the truth and equivalent to the assertion of a falsehood. The concealment of a fact which one is bound to disclose is an indirect representation that such fact does not exist, and constitutes fraud.' 37 C.J.S. 244, Fraud, § 16a.

"The rule is stated in *Restatement of the Law* under the heading, *Deceit: Business Transactions,* p. 116, § 550: "

■ Appellant further contends that there was no showing of wilful withholding from Boonstra of the security documents received from the Brues upon which to predicate a finding of fraud. But here, there was a duty to disclose the information appellant possessed and of which respondent was ignorant. Here, because of the superior business acumen and experience of appellant as compared with respondent, because of the superior factual knowledge of the one as against the factual ignorance of the other, and because appellant's officer knew respondent was relying on his superior knowledge, experience and judgment, there existed a quasi-fiduciary relationship, if not an actual one, that brings the case within the rule that a

" . . . party to a business transaction is under a duty to excercise reasonable care to disclose to the other before the transaction is consummated . . . such matters as the other is entitled to know because of a . . . relation of trust and confidence between them, . . . " Restatement, Torts § 551(2) (a), p. 116.

 Again appellant asserts that, since the encumbrances were matters of public record, the respondent had constructive knowledge of them and so should not have relied on appellant. He should have searched the record, appellant argues. Under the facts peculiar to this case, however, respondent was not bound to search the record to verify the facts. On the contrary he had a right to rely on the representations made.

A buyer's duty in this regard is set forth in 23 Am. Jur. § 163, p. 972:

"It is generally held that fraud may be predicated of false representations or concealments, although the truth could have been ascertained by an examination of public records. [*Fischer v. Hillman,* 68 Wash. 222, 122 Pac. 1016, cited in footnote.] As otherwise expressed, the general rule is that the mere fact that public records, if examined, would show the representee that representations of fact are false does not preclude his establishing fraud, because he is under no duty to make such examination. . . ."

Where misrepresentations actually deceive and mislead a party, and here they did, it is immaterial that proper investigation would reveal the truth. *Cunningham v. Studio Theatre, Inc.,* 38 Wn. (2d) 417, 229 P. (2d) 890; *Scroggin v. Worthy,* 51 Wn. (2d) 119, 316 P. (2d) 480.

The case of *Washington Central Imp. Co. v. Newlands,* 11 Wash. 212, 39 Pac. 366, has been so limited as to offer no comfort to appellant in this case. See *Fischer v. Hillman,* 68 Wash. 222, 122 Pac. 1016; *Kalmans v. Powles,* 121 Wash. 203, 209 Pac. 5, 29 A.L.R. 618.

The rule adopted by later decisions in this state is that "wrongdoers cannot shield themselves from liability by asking the law to condemn the credulity of their victims." *Cunningham v. Studio Theatre, Inc., supra.* It should be invoked here where the respondent had but a limited knowledge of real estate transactions and was limited in his knowledge of the English language. The appellant, on the other hand, was experienced in the real estate business and possessed title reports and other special information regarding the property. The respondent acted upon appel-

lant's invitation in reliance upon what appellant represented was a safe and profitable venture. Had respondent been advised that the Brues owned only a vendees' interest, and that forfeiture was more than a possibility because of the precarious financial position of the Brues, he would not have loaned the money.

Finally, the appellant maintains that the trial court erred in finding respondent unable to prevent the forfeiture, contending he could have avoided it by tendering the delinquent and future payments required. But, as a practical matter, Boonstra was not able either to refinance or raise in excess of $100,000 to protect his $5,500 investment. This appellant knew when initial negotiations occurred.

Fraud is proved by clear, cogent and convincing evidence.

The trial court's further conclusion that there was also a breach of warranty on appellant's part appears to be correct. However, the result reached on the question of fraud makes it unnecessary to decide this further issue.

The judgment is affirmed.

OTT, C. J., DONWORTH, HUNTER, and HALE, JJ., concur.