[No. 644-2.    Division Two.    November 30, 1972.]

HAROLD V. McCADAM et al., Appellants, v. EDNA R. HOSHOR et al., Respondents.

William H. Fraser, for appellants.

Terence Hanley (of Arthur & Hanley), for respondents.

PETRIE, C.J.—On December 1, 1963 plaintiffs, McCadam, as purchasers, and defendants, Hoshor, as sellers, executed a real estate contract for the purchase and sale of certain back lands along the south shore of Hood Canal in Mason County. Under the terms of the same document defendants leased to plaintiffs 180 feet of waterfront property adjoining the back lands purchased, with an option to purchase the leased premises exercisable within 5 years. Contending they had validly exercised the option to purchase, plaintiffs inaugurated this action to force specific performance. Defendants contended the option was not validly exercised and by counterclaim sought to quiet title in the leased premises to themselves.

Before the matter came on for trial, the parties entered into a stipulation on June 9, 1970 as "settlement" of the action, attempting to dispose of all the issues between themselves. Essentially, the stipulation provided that plaintiffs had given valid notice to exercise the option to purchase the easterly 100 feet of the leased premises effective December 1, 1968. Provisions were made, therefore, to return possession of the westerly 80 feet to defendants and to execute a real estate contract for the purchase of the easterly 100 feet, all effective December 1, 1968, including pro rata distribution of the real estate taxes paid on the 100 feet and of the rents collected on the 80 feet. The parties could not agree upon the purchase price, but did agree to a method of fixing the price by appraisal. They contemplated a closing of the sale within 60 days of resolution of the purchase price, and also agreed upon the terms of the real estate contract which they would execute at closing. A key paragraph of the stipulation, interpretation of which has given rise to the present difficulties, provided as follows:

> Plaintiffs will pay all funds required to be paid by them within sixty (60) days from the determination of the amount of such funds as are due and payable to meet any financial requirements to be made of them under the terms of this agreement, and all parties do agree that they will do everything necessary to complete the sale and purchase of the said 100 feet within sixty (60) days

from the time the price to be paid therefor is fixed as above provided. *Failure of the plaintiffs to deposit any sums required within the period as set forth in this paragraph shall constitute a failure to perform the terms of the option to purchase* and any rights in the plaintiffs to complete the purchase of the said 100 feet shall end and the plaintiffs shall have no further rights in the said 100 feet and title shall thereby be restored in the defendants free and clear of any claims, liens, or rights of the plaintiffs or anyone claiming under them.

(Italics ours.)

Some 15 days after execution of the stipulation (before the appraisers had been appointed), counsel for defendants notified counsel for plaintiffs in writing that plaintiffs owed defendants $1,370 for rents collected by plaintiffs on the 80 feet between December 1, 1968 and June 15, 1970. The letter declared, in part, "we do insist that this be paid within the sixty days from the date of the stipulation in order for McCadam to have any further rights to the 100 feet."

On October 6, 1970, defendants filed a motion for summary judgment accompanied by an affidavit of one of the defendants, which declared that the matter had been stricken from the trial calendar based upon the stipulation executed on June 9, 1970 and filed of record. The affidavit also recited the demand from defendants' counsel as set forth in his letter of June 24, 1970 to plaintiffs' counsel, and further asserted that counsel for plaintiffs had acknowledged receipt of that letter. Plaintiffs filed no countering affidavit or other supporting documents. After a hearing on the motion, the trial court granted defendants' motion and entered judgment quieting title to the previously leased premises in the defendants. Plaintiffs have appealed to this court.

We hold the judgment must be reversed because of any one of at least three reasons: (1) there was no basis for the court to ascertain whether or not the plaintiffs had failed to meet the demands set forth in defendants' letter of June 24; (2) the trial court's interpretation of the forfeiture clause

of the stipulation was unwarranted in the absence of any assertion that the parties intended there would be a series of "closings" creating piecemeal resolution of the financial obligations between the parties; and (3) the forfeiture should not have been effected without granting plaintiffs a reasonable opportunity to cure the defect.

The first reason assigned for reversing the judgment may appear to be a somewhat strict interpretation of the rule authorizing summary judgment. However, the moving party has the burden of demonstrating to the court that he is entitled to a summary judgment as a matter of law. Accordingly, the defendants had the burden of establishing (even under their theory of the meaning of the stipulation) that plaintiffs had failed to make the payment demanded through defendants' letter of June 15. There was no assertion of that fact, if it was a fact, in the affidavit accompanying defendants' motion. Absent such a showing, the defendants were not entitled to a judgment as a matter of law.

The second reason for reversing this judgment requires a closer look at the forfeiture clause in the stipulation set forth above. The stipulation is arguably subject to the interpretation that, prior to determination of the purchase price on the 100 feet, plaintiffs' failure to reimburse the defendants for the amount of rentals collected on the adjoining 80 feet since December 1, 1968, would constitute "failure to perform the terms of the option to purchase" the 100 feet. However, a prerequisite to the validity of such an argument is an interpretation of the stipulation that the financial responsibilities between the two contending parties could be ascertained on a piecemeal basis rather than at a single closing date. There was no factual assertion in the affidavit supporting the motion that the parties intended a piecemeal resolution of their respective obligations.

In the absence of collateral facts or extrinsic circumstances which might create a disputed factual issue, the determination of whether a written contract is ambiguous

and the resolution of such ambiguity is a question of law for the court. *Murray v. Western Pac. Ins. Co.,* 2 Wn. App. 985, 472 P.2d 611 (1970). Accordingly, the trial court was entitled to resolve any ambiguity, if any, in the contract as a matter of law. We disagree, however, with the trial court's interpretation of the stipulation because parties to a real estate contract normally contemplate a single closing date to dispose of financial obligations and to execute requisite documents. We note, additionally, that the stipulation did not make time of the essence to the contract. Under defendants' interpretation of the contract they could have chosen a date upon which to demand pro rata distribution of the real estate taxes which they had paid on the 100 feet, and still a third "closing" date 60 days after the final determination of the purchase price by the appraisers. Finally, the defendants' interpretation of the stipulation tends to increase the opportunity to effect a forfeiture which is abhored in this jurisdiction.

This brings us to the third, and real, reason for reversal. Assuming, for the sake of argument, that the defendants' affidavit is not defective and further that their theory of piecemeal closings is correct, it is elementary law in this jurisdiction that forfeitures are not favored and never enforced in equity unless the right thereto is so clear as to permit no denial. *John R. Hansen, Inc. v. Pacific Int'l Corp.,* 76 Wn.2d 220, 455 P.2d 946 (1969); *Shoemaker v. Shaug,* 5 Wn. App. 700, 490 P.2d 439 (1971). When a forfeiture is sought, courts attempt to provide substantial justice to both contracting parties. The pertinent search usually centers about whether or not a substantial financial loss will result to the purchaser with no corresponding loss to the seller if a period of grace is allowed. *Shoemaker v. Shaug, supra.*

In the case at bench, there is nothing in the record by which we might measure with any degree of accuracy the extent of either party's financial loss which would result either from a forfeiture or from granting a period of grace. However, it would appear that the plaintiffs' loss of the

opportunity to acquire the 100 feet of waterfront property would tend to render much less desirable the prior acquisition of the adjoining back lands previously purchased and apparently subdivided by them. Defendants are protected, at least in part, from any loss by a provision of the stipulation which requires plaintiffs to pay interest on the appraised price which has accrued from December 1, 1968 to the date of closing at the rate of 6 percent per annum.

■ Defendants contend that the plaintiffs had a mere option to purchase the 100 feet and had no vested interest in the property contemplated to be sold. We disagree. The stipulation asserted that plaintiffs had given valid notice of the exercise of their option. Thereafter plaintiffs had more than a contingency interest in the 100 feet. The contract to purchase was mutually binding upon both parties. Upon determination of the purchase price by third parties, the stipulation provided that "the parties will execute a real estate contract related back to December 1, 1968 . . ." There was nothing further to be done by either party to make the contract effective. *See Bulmon v. Bailey,* 22 Wn.2d 372, 156 P.2d 231 (1945). Having given valid notice of their intent to exercise the option, plaintiffs were entitled to specific performance of the contract. *Superior Portland Cement, Inc. v. Pacific Coast Cement Co.,* 33 Wn.2d 169, 205 P.2d 597 (1949). Clearly, they had a vested interest in the property protectable against an untimely forfeiture even though they had not yet formally executed the real estate contract.

The judgment quieting title to the disputed property in the defendants is reversed and the trial court will continue to supervise the "settlement" stipulated between the parties, if necessary.

PEARSON and ARMSTRONG, JJ., concur.

Petition for rehearing denied January 11, 1973.