[No. 3307-4-III.   Division Three.   October 7, 1980.]

JAN BAPTISTE MAAS, *Appellant*, v. THE CORPORATION OF GONZAGA UNIVERSITY, ET AL, *Respondents*.

398

*Kenneth Kato* and *Huppin, Ewing, Anderson & Hergert,* for appellant.

*Robert Whaley, Winston & Cashatt, Kermit Rudolf,* and *Dellwo, Rudolf & Schroeder,* for respondents.

MUNSON, J.—Jan Maas appeals from the dismissal of her claim that Gonzaga University School of Law negligently failed to warn her of probable failure in law school, which entitled her to money damages. She further appeals the court's refusal to grant a decree of specific performance ordering Gonzaga to issue her a law degree. We affirm the trial court's dismissal and conclude: (1) Gonzaga does not have a duty to warn applicants of prospective failure in law school; (2) judicial prudence demands that the court abstain from interference with the academic decisions of a

university; and (3) Maas' equal protection claim is un-founded.

Maas left her tenured teaching position in Alaska to attend Gonzaga University School of Law in 1974. Maas' law school admissions test (LSAT) score was 438, with a writing ability index of 45. Her undergraduate GPA at Brooklyn College, achieved in the late 1940's, was 1.84. In graduate school during the 10 years prior to her application to law school, however, she had maintained a grade point average of 3.1. In applying to Gonzaga, Maas also enclosed several persuasive letters of recommendation. She was accepted, and attended Gonzaga with the assistance of the Western Interstate Commission for Higher Education (WICHE), an interstate organization which enabled the State of Alaska to substantially pay for her law school tuition.

Gonzaga requires its students to maintain a cumulative 2.2 grade point average. She had failed to maintain this grade point at the end of the first year and was dismissed. However, she successfully petitioned for readmission prior to her second year of law school. Again, she failed to maintain a 2.2 cumulative average and was again dismissed from the law school. After attending summer courses in Ghana, Africa, under the auspices of Temple University Law School, she again appealed and, with the support of a professor from Temple and the Gonzaga Women's Law Caucus, was reinstated. This reinstatement was on the condition she would attain a cumulative 2.2 grade point average by the end of that semester. When she again was unable to meet the condition, she was dropped from the university without the option to further petition for readmission.

Maas then completed additional credits at the University of Washington,[1] giving her sufficient credits to graduate;

---

[1]The University of Washington accepted Maas, despite her not being in good academic standing, either by mistake or because good standing is not a prerequisite to admission to their summer program.

Gonzaga has refused those credits and has refused to award her a law degree.

Gonzaga filed a motion to dismiss Maas' action for failure to state a claim upon which relief could be granted or, in the alternative, a motion for summary judgment. The motion to dismiss was granted. Pursuant to CR 12(b), the trial court considered depositions, affidavits, and other documentation in the files, as well as the pleadings. This court will therefore review the decision of the trial court as one on a motion for summary judgment. *Ortblad v. State,* 85 Wn.2d 109, 111, 530 P.2d 635 (1975).

We must determine whether a material issue of fact exists. *Felsman v. Kessler,* 2 Wn. App. 493, 468 P.2d 691 (1970). Maas argues Gonzaga had the duty to warn her she was unlikely to successfully complete law school, and the university's negligence in failing to so warn resulted in the loss of her tenured teaching job in Alaska, with resulting damages. No authority is cited which requires a university to inform its prospective students of the probability of their success or failure. We have found no such authority and have serious doubts if such a duty exists.

Maas argues that a confidential or fiduciary relationship arises between the university and a student since the university is in a better position to know of the student's probable success than is the student. De facto confidential relationships may arise whenever one party reposes confidence in another who in turn exercises dominion and influence over the first. *Salter v. Heiser,* 36 Wn.2d 536, 219 P.2d 574 (1950); *see also Boonstra v. Stevens–Norton, Inc.,* 64 Wn.2d 621, 393 P.2d 287 (1964); *Oates v. Taylor,* 31 Wn.2d 898, 199 P.2d 924 (1948). *McCutcheon v. Brownfield,* 2 Wn. App. 348, 467 P.2d 868 (1970). We decline to apply these precedents to graduate school admissions.

██ The relationship of students and universities is generally contractual rather than confidential or fiduciary. *See Zumbrun v. University of S. Cal.,* 25 Cal. App. 3d 1, 101 Cal. Rptr. 499, 51 A.L.R.3d 991 (1972); *see also Hoff-*

*man v. Board of Educ.,* 49 N.Y.2d 121, 400 N.E.2d 317, 424 N.Y.S.2d 376 (1979); *University of Miami v. Militana,* 184 So. 2d 7701 (Fla. Dist. Ct. App. 1966). The possibility of academic failure is implicit in the nature of the educational contract between a student and a university. A graduate student seeking admission to a university knows a certain level of performance is necessary to obtain a degree. It is unreasonable to require the university to warn applicants of the obvious. *Randolph v. Arizona Bd. of Regents,* 19 Ariz. App. 121, 505 P.2d 559, *cert. denied,* 414 U.S. 863, 38 L. Ed. 2d 119, 94 S. Ct. 84 (1973).

Furthermore, Maas' efforts to gain admission, in excess of the minimum required by Gonzaga, estop her from complaining of the university's granting her admission. Maas supplied not only her undergraduate grades and LSAT scores, but also grades from graduate programs and letters of recommendation which figured heavily in her acceptance.

The university cannot be burdened with the duty of advising her of prospective failure, based solely upon the fact her LSAT and undergraduate grade point averages were below the statistical norms for acceptance into the university. In *DeFunis v. Odegaard,* 82 Wn.2d 11, 42, 507 P.2d 1169 (1973), *vacated,* 416 U.S. 312, 40 L. Ed. 2d 164, 94 S. Ct. 1704 (1974), the court stated:

> Where the criteria for admissions are not arbitrary and capricious, we will not vitiate the judgment of the admissions committee unless a constitutional violation is shown. Considering the debatable nature of the criteria, we do not find the consideration of race in the admission of those minority applicants who indicate competence to successfully complete the law school program to be arbitrary and capricious. *Law school admissions need not become a game of numbers; the process should remain sensitive and flexible, with room for informed judgment in interpreting mechanical indicators.* The committee may consider the racial or ethnic background of an applicant when interpreting his standardized grades and test scores.

(Italics ours.) Subjective, flexible consideration should be given to each applicant's individual qualifications, in addition to statistical qualifications. Statistical indicators do not guarantee—or preclude—success.[2]

We conclude that under these circumstances there is no duty on the part of the university to warn applicants of prospective failure. On this issue summary judgment was properly granted.[3]

Maas next asked the Superior Court to specifically order Gonzaga to grant her a law degree. Because of credits earned at other law schools, which Gonzaga refused to recognize, Maas contends she had sufficient credits to be awarded a degree and Gonzaga should be forced to accept those credits. The Superior Court decided it lacked authority to order a private institution to award a degree where its refusal to do so is based upon academic performance. We agree.

■ As a general rule, the courts will not interfere with purely academic decisions of a university. *Mahavongsanan v. Hall,* 529 F.2d 448 (5th Cir. 1976); *Jansen v. Emory University,* 440 F. Supp. 1060 (N.D. Ga. 1977), *aff'd,* 579 F.2d 45 (5th Cir. 1978); *Keys v. Sawyer,* 353 F. Supp. 936 (S.D. Texas 1973), *aff'd,* 496 F.2d 876 (5th Cir. 1974); *see also Board of Curators v. Horowitz,* 435 U.S. 78, 55 L. Ed. 2d 124, 98 S. Ct. 948 (1978). Professors in the position of

---

[2]While it is true that the university made an arithmetic error in computing the index used for determining admission of students in her case, there was no cutoff point below which a student would not have been accepted at the university at that time. In fact, three people had graduated from Gonzaga Law School since 1970 with combined entrance indexes less than that of Maas, but with high enough grade point averages to meet graduation requirements.

[3]Maas further argues that Gonzaga was guilty of negligent misrepresentation. To establish this claim, Maas would have to show that Gonzaga made false statements (or material omissions of facts), to induce a sale, which Maas relied upon and which she could justifiably rely upon. *J & J Food Centers, Inc. v. Selig,* 76 Wn.2d 304, 311, 456 P.2d 691 (1969). This is the same issue as the initial question of negligence. Whether Maas had a right to rely on Gonzaga's purportedly negligent failure to disclose her prospective failure in law school is the same question as whether Gonzaga had a duty to disclose prospective failure.

making academic decisions will not be second–guessed by the courts. Where a university acts in an arbitrary and capricious fashion or in bad faith, then courts generally have accepted review of these decisions. *Depperman v. University of Ky.,* 371 F. Supp. 73 (E.D. Ky. 1974); *Connelly v. University of Vt.,* 244 F. Supp. 156 (D. Vt. 1965).

Maas urges that Gonzaga acted in bad faith by graduating nine persons with lower GPA's than her own. But Maas' GPA is higher than these other nine persons only if certain credits earned at other law schools are averaged into her GPA.[4] It is therefore Gonzaga's refusal to accept those credits which is in question. Maas makes no allegation, however, that the refusal to accept those credits was made in bad faith.

The decision to award or not award a degree, and based upon what criteria, is one uniquely within the academic sphere. The courts should abstain from interference in this process unless arbitrary and capricious decision making or bad faith is present. Decisions arrived at honestly and with due consideration are not arbitrary and capricious. *McDonald v. Hogness,* 92 Wn.2d 431, 598 P.2d 707 (1979). We find no evidence of bad faith or an arbitrary and capricious action by the defendant. The trial court properly rejected Maas' second contention.

Finally, Maas asserts for the first time on appeal a violation of equal protection of the law. The deprivation of a supposed constitutional right is not actionable unless significantly intertwined with state action. *Faircloth v. Old Nat'l Bank,* 86 Wn.2d 1, 3, 541 P.2d 362 (1975), *appeal dismissed,* 425 U.S. 986, 48 L. Ed. 2d 812, 96 S. Ct. 2195 (1976). Maas asserts that Gonzaga's participation in the WICHE program provides sufficient state action. However, the State's involvement must be significant, concerned with

---

[4]Maas' GPA, as computed by Gonzaga, was 2.113. Only one person was graduated with a lower GPA—2.105 in 1972—which was before Maas was accepted at the law school. What may have been one mistake is not justification for a second.

the activity which caused the injury, and must aid, encourage, or connote approval of the activity. *Long v. Chiropractic Soc'y,* 93 Wn.2d 757, 613 P.2d 124 (1980); *see also Powe v. Miles,* 407 F.2d 73, 81, 32 A.L.R.3d 846 (2d Cir. 1968). RCW 28B.70, which authorized the WICHE program, does not authorize any regulation over the university's admission process or academic procedures.

The trial court is affirmed.

GREEN, C.J., and McINTURFF, J., concur.

Reconsideration denied November 13, 1980.

Review denied by Supreme Court January 19, 1981.