THEODORE C. ENNS, *Appellant,* v. BOARD OF REGENTS
OF THE UNIVERSITY OF WASHINGTON, *Respondent.*

*Theodore C. Enns,* pro se.

*Kenneth O. Eikenberry, Attorney General,* and *Elsa
Cole, Assistant,* for respondent.

RINGOLD, J.—In April of 1980, the Department of Mathematics at the University of Washington (University) dismissed Theodore C. Enns from its doctoral program for academic reasons. Enns challenged his termination in a complaint filed in superior court, and the trial court dismissed his action by granting a summary judgment to the University. On appeal, Enns claims that his termination was arbitrary and capricious and that the University violated its own rules during the process. We find there is no genuine issue of material fact and conclude that the University acted lawfully and is entitled to judgment as a matter of law. We therefore affirm the trial court.

Enns entered the doctoral program in the fall of 1975. At that time, he received a pamphlet entitled "Graduate Study in Mathematics" which stated that a student normally completes the four required preliminary examinations by the fall of the third year. The pamphlet also states that a student who becomes seriously behind schedule in passing the exams will generally be advised to terminate his studies. In the spring of 1976, Enns failed two preliminary examinations and passed none. In the fall of 1976, Enns failed all four preliminary examinations. In the spring of 1977, Enns again failed all four preliminary examinations. On April 11, 1977, Enns met with the chairman of the Graduate Advisory Committee concerning his performance on the preliminary examinations. He was advised that his performance was so dismal that he should consider withdrawing from the Department. Because Enns claimed special problems, he was allowed to take the examinations again in the fall of 1977. He barely passed one while failing the other three. Enns was then informed by the graduate program advisor that due to his extremely poor performance, there was no reason to believe he had the potential necessary to earn a Ph. D. degree. He was nonetheless

allowed to attempt the three exams in the spring of 1978, but again was unable to pass any of them. On April 12, 1978, he was advised by the graduate program advisor that he did not have the ability to obtain his degree. Enns then agreed to pursue a Master of Science degree with the understanding that he would receive no financial support after December 15, 1978.

The Department continued to allow Enns to attempt the examinations in the spring and fall of 1979, but when he failed to pass any of them, he was asked to formally withdraw from the Graduate School. On November 21, 1979, Enns refused to withdraw, and on December 1, 1979, the Graduate Advisory Committee decided that he would be placed on "final probation" if he registered for the winter 1980 quarter. The Committee also decided that Enns would be dropped if he attempted to register beyond the winter quarter. Enns registered for the winter quarter and therefore was placed on "final probation." He was informed by the Dean of the Graduate School that unless he demonstrated substantial improvement and obtained the support of his Department he would not be allowed to continue at the University.

In March of 1980, Enns petitioned the chairman of the mathematics department to rescind the change of status and to allow him to attempt one more preliminary examination. For compassionate reasons, the chairman allowed Enns to take one more exam, but refused to change his "final probation" status. Enns failed the test.

Enns appealed his "final probation" to the Dean of the Graduate School. The Dean rejected the appeal and refused to refer the matter to the Graduate School Academic Grievance Committee, asserting there was no issue within the Committee's province. Enns appealed to the Provost of the University, and the Provost upheld the decision of the Dean. Enns was formally terminated from the University on April 22, 1980. Thereafter, he filed his complaint in superior court.

The decision not to award a degree is one

uniquely within the expertise of the faculty most familiar with the student's abilities. Courts should not interfere unless the action is arbitrary and capricious or taken in bad faith. Decisions arrived at honestly and with due consideration are consistent with the requirements of due process and are not arbitrary and capricious. *Board of Curators v. Horowitz,* 435 U.S. 78, 55 L. Ed. 2d 124, 98 S. Ct. 948 (1978); *Maas v. Corporation of Gonzaga Univ.,* 27 Wn. App. 397, 618 P.2d 106 (1980). Because Enns appeals a summary judgment, we must review the facts in the light most favorable to Enns and determine whether a material issue of fact exists. *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963).

Enns concedes that due process does not require more extensive procedures than those provided by the University's own rules and regulations. *Horowitz.* His arguments on appeal are based upon the University's alleged violation of its procedural rules and regulations. He first contends that the University did not comply with its duty to communicate clearly to him the conditions that would necessitate a change of status. He relies on a provision in Graduate School Memorandum 16 providing that a department must clearly communicate its requirements to its students. Enns has submitted no fact to challenge the well documented showing by the University that it fully complied with this duty. His bare conclusory allegations concerning this point are mere surplusage and are inadequate to create a genuine issue of material fact. *American Linen Supply Co. v. Nursing Home Bldg. Corp.,* 15 Wn. App. 757, 551 P.2d 1038 (1976).

Enns next contends that the University acted arbitrarily when it did not precede "final probation" with a less serious status change such as a formal warning. Graduate School Memorandum 16 outlines the various options available to the Department when a student's progress has been unsatisfactory. Nothing in the language of this provision or any other rule requires the University to precede a "final probation" order with a lesser form of probation or formal

warning. Enns' contention in this regard is therefore without merit.

Enns' last contention is that the University violated its own rules when it refused to grant him a hearing on his grievance. Concerning a graduate student's appeal rights, Graduate School Memorandum 16 states:

> A graduate student has the right to appeal a change of status action. Appeal should be made first to the Chairperson of the degree–offering unit. If not resolved at this level, the student may appeal next to the Associate Dean for Student Affairs of the Graduate School who may recommend that the Dean of the Graduate School present the case to the Standing Committee on Appeals of the Graduate School. These appeal procedures are detailed in Graduate School Memorandum No. 33, "Complaint or Grievance Procedures for Graduate Students."

On its face, this provision gives the Dean of the Graduate School the discretion not to allow a change of status action to be submitted to a formal grievance under the procedures of Graduate School Memorandum 33. Here, the Dean chose not to submit the matter to the grievance procedure. Enns contends that the submission was mandatory under memorandum 33:

> Graduate students who encounter academic problems, e.g., faculty, departmental, college or Graduate School policies affecting individual student prerogatives, deviations from stated grading practices (but not individual grade challenges), unfair treatment, and related issues, may seek resolution of their complaints as described below.
>
> . . .
> The student is encouraged first to attempt to resolve a grievance with the faculty . . . most directly concerned.
>
> . . .
> If the student is dissatisfied with the informal conciliation, he or she may file a formal complaint with the Dean of the Graduate School.
>
> . . .
> A formal grievance will be referred to the Chairperson of the Graduate School Academic Grievance Committee who shall . . . designate two faculty and two student

members of the Committee to serve as a Hearing Panel.

█ The simple answer to Enns' argument is that the language of memorandum 33 has no application here. The complaint concerned his change of status, and an appeal of a change of status is controlled by the discretionary language in memorandum 16. To the extent there is a conflict between the discretionary language of memorandum 16 and the right to assert a grievance under memorandum 33, the provision in memorandum 16 is more specific as to change of status and qualifies the meaning of the general language in memorandum 33. *See Washington Local Lodge 104, Int'l Bhd. of Boilermakers v. International Bhd. of Boilermakers,* 28 Wn.2d 536, 183 P.2d 504 (1947). Furthermore, there are no collateral facts or extrinsic circumstances alleged by Enns to create a disputed factual issue on what is otherwise the legal question of the resolution of the meaning of the documents. *McCadam v. Hoshor,* 7 Wn. App. 913, 503 P.2d 756 (1972).

The only remaining question is whether the refusal to submit the matter to the grievance procedure was arbitrary and capricious. Enns relies on evidence that the University refused to place his research advisor on the Graduate School Advisory Committee, but that decision, examined in the light most favorable to Enns, does not allow a reasonable inference of an arbitrary refusal to submit his change of status to the grievance committee. Enns' research advisor submitted an affidavit detailing Enns' demonstrated ability in research and publication of academic papers. The affidavit, however, contained no information relevant to Enns' ability or inability to pass the required preliminary examinations and qualify for a doctoral degree. Nor did the affidavit state that the research advisor would have recommended Enns' continued enrollment in the doctoral program.

The University was considerate and patient considering Enns' record of failing 23 out of 24 preliminary examinations in 4 years. Enns has presented no facts that logically

904

tend to dispute the reasonableness of the decision to terminate him from the program. He does not allege improprieties in the evaluation of his preliminary examinations. Nor does he allege any facts to warrant an inference that he would ever be able to satisfy the academic requirements of the mathematics department. The decision not to refer the matter to a formal grievance was made on the tenable ground that Enns was academically unfit. We cannot interfere with that decision. *Maas*. Accordingly, the University has met its burden of showing that the Dean did not arbitrarily and capriciously refuse to submit the matter to the grievance committee, and Enns has not submitted any facts to dispute this conclusion.

There is nothing in the record to contradict the showing by the University that it fully complied with its own rules and regulations and that it is entitled to judgment as a matter of law.

The judgment of the trial court dismissing this action is affirmed.

JAMES and CORBETT, JJ., concur.

Reconsideration denied May 26, 1982.