[No. 11072-9-III.   Division Three.   July 2, 1991.]

JOSEPH OCHSNER, *Appellant,* v. BOARD OF TRUSTEES OF WASHINGTON COMMUNITY COLLEGE DISTRICT No. 17, ET AL, *Respondents.*

*Robert F. Ewing* and *Huppin, Ewing & Anderson,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Stewart A. Estes, Assistant,* for respondents.

THOMPSON, J.—Joseph Ochsner appeals the summary dismissal of his action against the Board of Trustees of Washington Community College District 17 (College). He alleged the College breached its educational contract and its duties under Washington law with regard to a programming controller class at Spokane Community College in the winter quarter of 1989. We hold Mr. Ochsner has set forth specific facts showing a genuine issue for trial. We therefore reverse the summary dismissal.

In granting the College's motion for summary judgment, the court considered the following information contained in various affidavits and answers to interrogatories:

Dean Croskrey is the chairman of the Department of Fluid Power Technology at Spokane Community College and taught the programming controller class in question. The class met 3 days a week from 12:30 to 2:30 p.m. Mr. Croskrey calculated grades according to a written policy based one-third on attendance. The policy specified that if a student missed 6 or more days per quarter, he or she would receive a "0" for the attendance portion of the final

grade. Mr. Croskrey attested the Department's advisory board insisted upon the attendance provisions because absenteeism is the primary problem experienced by vocational industries with their employees. The board is made up of industry representatives.

Mr. Croskrey was also responsible for supervising the completion of the College's new hydraulics laboratory by February 1989. He attested he advised his students that this responsibility might result in his being late for class. He told them to use the time working on their assignments. If he were going to be absent for an entire class period, he would leave a message to that effect on the blackboard.

In his affidavit, Mr. Ochsner stated he did not recall being told by Mr. Croskrey that he would be late for class or to stay busy doing other things while waiting for him. Mr. Ochsner further attested:

> On various occasions I waited for Croskrey to show up until after 1:30 or later, but finally left out of frustration. On some of these occasions I had signed in at 12:30 when I got to class on a signup sheet sometimes made available, but obviously from the Croskrey attendance record . . . he marked me absent when he finally got to the class, and disregarded the fact that I had been there at 12:30 when class was to start, and gave no credence to my signing in at that time or waiting around for long periods of time.

Mr. Croskrey marked Mr. Ochsner absent for 7 days. The resulting "0" which Mr. Ochsner received for attendance meant that he received a failing grade for the course.[1] Since the course was required for a degree in fluid power technology, Mr. Ochsner did not receive the degree.

Joel Angstrom, another student in the class, attested: "There were times that I left after waiting at least a half hour for Croskrey to arrive, and I did not return. I did this probably six or seven times. Whether I was marked absent, I do not know." Attached to Mr. Ochsner's affidavit is a

---

[1]During oral argument, counsel for the College acknowledged that Mr. Ochsner's grades for classroom work and tests were high enough to allow a passing grade had he not received a "0" for attendance.

class attendance record showing Mr. Angstrom had 100 percent attendance. Mr. Angstrom received a passing grade. He also did not recall Mr. Croskrey telling the class that he would be late. Both students stated they did not have enough class work to keep them busy while waiting for Mr. Croskrey.

Mr. Ochsner and his counsel met with the College's dean of instruction, then with its president, and finally with its Board of Trustees, seeking to have his grade changed. At each level, his request was denied. The affidavits of the dean, the president, and Dee McMillan of the Board stated that the attendance rules were applied to all students in the same manner and that Mr. Ochsner received the grade he earned.

In its oral opinion, the Superior Court cited *Maas v. Corporation of Gonzaga Univ.*, 27 Wn. App. 397, 403, 618 P.2d 106 (1980), *review denied,* 95 Wn.2d 1002 (1981) for the following general rule:

> The decision to award or not award a degree, and based upon what criteria, is one uniquely within the academic sphere. The courts should abstain from interference in this process *unless arbitrary and capricious decision making or bad faith is present.* Decisions arrived at honestly and with due consideration are not arbitrary and capricious.

(Italics ours.) *See also Enns v. Board of Regents,* 32 Wn. App. 898, 650 P.2d 1113 (1982); *Marquez v. UW,* 32 Wn. App. 302, 648 P.2d 94, *review denied,* 97 Wn.2d 1037 (1982), *cert. denied,* 460 U.S. 1013 (1983); Annot., *Student's Right To Compel School Officials To Issue Degree, Diploma, or the Like,* 11 A.L.R.4th 1182 (1982). The court concluded the record did not present a question of material fact on the issue of whether Mr. Croskrey acted arbitrarily and capriciously in failing Mr. Ochsner. In its view, the affidavits of Mr. Ochsner and Mr. Angstrom were vague, broad, and lacked specificity.

■ Initially, we note the College, as the party moving for summary judgment, has the burden of proving there is no genuine issue of material fact. *Balise v. Underwood,* 62

Wn.2d 195, 199, 381 P.2d 966 (1963); *Thompson v. Rockford Mach. Tool Co.,* 49 Wn. App. 482, 493, 744 P.2d 357 (1987), *review denied,* 110 Wn.2d 1007 (1988). In ruling on the College's motion, the court considers the material evidence and all reasonable inferences most favorable to Mr. Ochsner, the nonmoving party. *Enns,* at 901 (citing *Balise*).

When viewed most favorably to Mr. Ochsner, Mr. Angstrom's affidavit gives rise to a reasonable inference that Mr. Croskrey did not apply the attendance policy evenly. Mr. Angstrom states he left class early on several occasions, but his attendance record does not reflect any absences. While the *number* of times he left early is not set forth with certainty, he is definite in his assertion that he did, at times, leave class before Mr. Croskrey arrived. The foregoing creates a genuine issue as to whether Mr. Croskrey's evaluation of Mr. Ochsner's attendance was arbitrary and capricious.[2]

In addition, the evidence, as presented in the documents considered by the Superior Court, raises an issue as to whether the decision to count Mr. Ochsner absent was arbitrary and capricious. The College does not rebut Mr. Ochsner's assertion that he waited as long as an hour for Mr. Croskrey to arrive before he left. Mr. Ochsner and Mr. Angstrom do not recall Mr. Croskrey instructing the students to wait for him. Again, while the affidavits do not *contradict* Mr. Croskrey's affidavit on this point, they raise a question as to the clarity of Mr. Croskrey's communication on the important matter of attendance—a matter that

---

[2]In *Maas,* the court held the fact the defendant law school had graduated one other person with a lower GPA than the plaintiff was not ground to reverse a summary judgment dismissing the plaintiff's action. But there, the person with the lower GPA had graduated *before* the plaintiff was even admitted to the law school. *Maas,* at 403 n.4. Here, Mr. Angstrom and Mr. Ochsner were members of the same class. The reasonable inference from Mr. Angstrom's affidavit is that the different treatment was the result of bad faith, not simply a mistake.

ultimately formed the basis for Mr. Ochsner's failing grade. The summary dismissal must therefore be reversed.

The College urges an alternative basis for affirming the summary dismissal of this action. According to the College, the court lacks jurisdiction. *I.e.,* it contends a student does not have a property interest sufficient to give rise to a substantive right under the due process clause to a particular grade.

In support of its argument, the College relies upon *Keys v. Sawyer,* 353 F. Supp. 936 (S.D. Tex. 1973) and *Connelly v. University of Vt. & State Agricultural College,* 244 F. Supp. 156 (D. Vt. 1965). However, those cases hold only that the courts will not review a student's *academic* performance. Both cases recognize that the courts will review arbitrary and capricious official action that may have led to a student receiving a particular grade. *Keys,* at 940; *Connelly,* at 161. This latter type of review appears to be universally recognized. *See* 11 A.L.R.4th 1182, and cases cited therein.

The College also references *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 88 L. Ed. 2d 523, 106 S. Ct. 507 (1985) and *Board of Curators v. Horowitz,* 435 U.S. 78, 55 L. Ed. 2d 124, 98 S. Ct. 948 (1978) as proof that the courts have yet to recognize a substantive due process right in this context. We have read those two opinions and the discussion found in 2 R. Rotunda, J. Nowak & J. Young, *Constitutional Law: Substance and Procedure* § 17.9, at 292 (1986). The Court in those cases notes it has yet to decide whether a student has a protected property interest in a grade such that the judicial branch will review a college's judgment *as to the student's fitness. Ewing,* 106 S. Ct. at 513. But both *Ewing* and *Horowitz* recognize that the court will review whether the procedures used by a college in determining

the grade are fair. Mr. Ochsner's action relates to the procedures used in assigning him a grade. Thus, the court had jurisdiction to consider Mr. Ochsner's claim.

Reversed and remanded for trial.

GREEN, C.J., and MUNSON, J., concur.