[No. 25566.   Department Two.   September 5, 1935.]

A. E. POWELL, *Appellant,* v. C. A. GRAHAM *et al.,*
*Respondents.*[1]

[1]Reported in 48 P. (2d) 952.

*Neil C. Bardsley* and *H. N. Martin,* for appellant.

*Davis, Heil & Davis,* for respondents Graham *et al.*

*Horace Kimball,* for respondents Inland Products Company *et al.*

*Parker W. Kimball,* for respondent Armour & Company.

STEINERT, J.—Plaintiff brought an action to recover damages resulting from an alleged conspiracy to ruin his business. Defendants' several demurrers to successive complaints having been sustained, and plaintiff declining to plead further, judgments of dismissal with prejudice were entered, from which plaintiff has appealed.

The sole question here is whether the second amended complaint states *facts* sufficient to constitute a cause of action.

The complaint introduces the parties litigant as follows: Appellant has for many years been engaged in the business of buying and selling ice, has installed facilities and equipment for carrying on both a wholesale and a retail ice business, and has been making good profits and gains from the operation of his business. Respondent Graham is the president of respondents Ice Delivery Company and Diamond Ice & Fuel Co., both of which are Washington corporations. Respondents Addison Miller, Inc., and Great Northern Icing Co., Minnesota corporations doing business in this state, are closely affiliated with the other two above named corporations, having interlocking officers and directors. Respondents Inland Products Co. (now Bohemian Breweries, Inc.), Empire Ice & Shingle Co., Carstens Packing Co., and Armour & Co., are corporations either organized and existing under the laws of

Washington, or else permitted to do business therein. The four last named corporations are manufacturers of ice and sell the same as a by-product.

The gist of the pleading is contained in paragraphs III, IV, V and VI, which read as follows:

"III. That on or about the 1st day of December, 1929, the defendant C. A. Graham, for the purpose of injuring and damaging the plaintiff in his ice business, conceived a plan and scheme, unlawfully and injuriously designed and intended to prevent free and open competition in the sale of ice, to control, fix the price, limit the production and regulate the transportation, of ice, to destroy the plaintiff's business of wholesaling and retailing ice, in the vicinity of and adjacent to the city of Spokane, Washington; that with such design and intention did maliciously solicit and procure, of and from his co-defendants, and each of them, an agreement, whereby they unlawfully, wilfully and maliciously combined, conspired and agreed together, to prevent free and open competition in the sale of ice, to control, fix the price, limit the production, and regulate the transportation of ice, in the vicinity and adjacent to the city of Spokane, Washington, for the purpose of damaging, injuring and destroying plaintiff's business in ice; that in carrying out such plan, scheme and conspiracy, and in pursuance thereof, the defendants agreed that all transactions for ice should be through the defendant Ice Delivery Co.

"IV. That the plaintiff, between the 1st day of January, 1934, and up and until the commencement of this action in May, 1934, endeavored to purchase ice from defendant manufacturers of ice in Spokane, in order that he might serve his many customers, but was informed by each that such purchases would have to be made through the Ice Delivery Co., notwithstanding that the plaintiff had in prior years purchased ice from such manufacturers, for which he paid cash, and offered to pay cash upon delivery; that each of the defendants, in pursuance of said agreement aforesaid, refused to sell the plaintiff ice, well knowing that plaintiff could not purchase ice from other sources for the

successful transaction of his ice business for the year 1934, said defendants controlling all ice, manufactured or wholesaled in quantity, in the vicinity and adjacent to the city of Spokane, Washington, during the year 1934, and by reason thereof did destroy plaintiff's business in ice for the year 1934.

"V. That the Ice Delivery Co. through its officers and agents, in pursuance of said conspiring contract aforesaid, entered into contracts wherein they were parties of the first part, and others were parties of second part, which contract contains following provisions:

" 'Party of the second part agrees to buy all ice he may require to operate above ice station from party of first part, and further agrees not to wholesale ice or sell ice to anyone engaged in the sale of ice; and further agrees that he will not make deliveries of any kind or quantity to homes or places of business. It is further agreed that the price of said ice shall be $5.00 per ton in one ton lots or more—said second party agrees to sell ice at such price as shall be fixed by party of the first part.' which contract had to be signed by all engaged in the retail of ice, under such plan and scheme aforesaid, and was signed and carried out by retailers of ice in the city of Spokane, Washington, in the year 1934.

"VI. That the plaintiff is in doubt as to the defendants from which he is entitled to redress, but by reason of the carrying out of such plan, scheme and conspiracy, the plaintiff has suffered damages for the year of 1934 in the sum of Two Thousand Five Hundred Dollars."

For easier reading and reference, the substance of these four paragraphs may be summarized and condensed as follows: (1) Respondent Graham, for the purpose of injuring and damaging the appellant, *conceived* a plan which was unlawfully *intended and designed* to prevent free and open competition in the sale of ice, to control, fix the price, limit the production and regulate the transportation of ice, and to destroy ap-

pellant's business; (2) with such design and intention, Graham entered into an agreement with the other respondents whereby they agreed to prevent free and open competition in the sale of ice, and to control, fix the price, limit the production and regulate the transportation of ice in the vicinity of Spokane, for the purpose of injuring and destroying appellant's business; (3) in carrying out, and pursuant to, such plan and conspiracy, the respondents agreed that all transactions for ice should be through respondent Ice Delivery Co.; (4) that appellant endeavored to purchase ice from the four respondent manufacturers and offered to pay cash therefor, but was informed by each of them that he would have to buy his ice through respondent Ice Delivery Co.; that each of the respondents refused to sell appellant ice, knowing that he could not purchase it from any other sources, they having control of all ice manufactured or wholesaled in quantity in or around Spokane; (5) that, in pursuance of the agreement between the respondents, all purchasers of ice from Ice Delivery Co. were compelled to, and did, sign contracts wherein they agreed to purchase all ice required by them from Ice Delivery Co., at five dollars per ton, and to sell it at such prices as should be fixed by the latter company; (6) that, by reason of the adoption and execution of such plan and conspiracy, appellant's business for 1934 has been destroyed, damaging him in the sum of twenty-five hundred dollars.

Carrying the process of abridgement still further and reducing appellant's pleading to its fundamental structure, we have this: Respondents, for the purpose of injuring and destroying appellant's business, adopted a plan designed to prevent free and open competition in the sale, and to control, fix the price, limit the production and regulate the transportation, of ice, and carried out the plan by agreeing among themselves

that all transactions for ice should be handled through a single agency; that, thereupon, the respondents, who controlled all the ice in the vicinity of Spokane, refused to sell appellant any ice, although appellant offered to pay them cash; that the agency which handled all the ice of the respondents compelled all retail dealers who purchased from it to sign agreements to buy all ice required by them from such agency at a specified price and to sell it at such prices as the agency should fix; that the execution of such plan damaged appellant in the sum of twenty-five hundred dollars.

We come, then, to the application of the demurrer as a test of the strength of the amended complaint. For convenience, we shall first analyze the pleading according to its six component divisions, or clauses, as above set forth.

If clauses numbered (1) and (2) can be said at all to contain allegations of fact, rather than of conclusions, they are merely expressions of intent. They can have no force beyond the consummation of the *acts* with which they are associated. They, of themselves, give rise to no cause of action, but must be read in connection with that which it is alleged was actually done by the respondents. 1 Cooley on Torts (4th ed.), p. 86, § 45.

Clause (3) may, for the purpose of the argument, be conceded to be an allegation of fact, although it, too, would be without force unless clause (4) be a sufficient allegation of a consummation of the agreement; this, too, for the purpose of the argument, we shall concede. But the respondents, particularly the manufacturers, had a perfect right to determine individually and to agree mutually among themselves and with others, that they would handle their product through the medium of a central, exclusive agency. There was nothing inherently wrongful in such an

arrangement. Very conceivably, it would be in pro-motion of a legitimate self-interest, suggesting no sin-ister purpose and not, of itself, inimical to the interests of the public. It does not inherently tend to, or result in, the control of either supply or price of the commod-ity, but suggests simply a convenient method of distri-bution of a product. *Washington Cranberry Growers Ass'n v. Moore,* 117 Wash. 430, 201 Pac. 773, 204 Pac. 811, 25 A. L. R. 1077.

■ Clause (4) is apparently the crest of appel-lant's complaint. It alleges a refusal on the part of the respondents to sell ice to appellant. But that does not invest appellant with a cause of action. He had no contract with any of the respondents for the purchase or sale of ice, and there was no legal duty resting upon any of them to sell him ice. Again, it may be observed that the public interest is not here involved. It is simply a controversy between parties engaged in a sim-ilar business. The law does not compel a man to have business relations with another.

"It is a part of every man's civil rights that he be left at liberty to refuse business relations with any person whomsoever, whether the refusal rests upon reason, or is the result of whim, caprice, prejudice or malice." 2 Cooley on Torts (4th ed.), p. 178, § 224.

The same author says further:

"As one person may refuse to have business rela-tions with another, so two or more may combine or agree together not to deal with a particular person for any reason they see fit, and no action will lie either to prevent the carrying out of this agreement or for dam-ages consequent upon its performance." 2 Cooley on Torts (4th ed.), p. 201, § 231.

The manufacturing respondents, having made a law-ful agreement among themselves to handle their prod-uct in a particular way, are not required by law to break that agreement by individually selling ice to

the appellant. In any event, the refusal of respondents to sell ice to the appellant did not deprive him of all right or opportunity to purchase the commodity. He could still buy it, as all purchasers and users bought it, from the central agency.

■ Clause (5), we take it, is intended to illustrate and affirm the proposition that the purpose and effect of the plan and agreement of the respondents were to compel appellant to enter into a contract with the central agency which would require appellant to desist from wholesaling ice and to sell ice purchased by him at such prices as the central agency should fix. With reference to the wholesale feature, we see no reason why the manufacturers themselves might not legitimately reserve the wholesale business to themselves through a mutual agency, or why they might not legitimately contract with another in his separate capacity with reference to that end of the business.

With reference to the price-fixing feature of the clause, we shall, once more, begin with a concession, for the purposes of this case. We may concede that any agreement among the respondents to fix and control the price of ice was violative of article XII, § 22 of the state constitution, which provides that monopolies and trusts shall never be allowed in this state, and that no corporation, copartnership or association of persons shall, directly or indirectly, combine or make any contract for the purpose of fixing the price, limiting the production or regulating the transportation of any product or commodity. The constitution itself and the statutes enacted in pursuance thereof furnish ready and adequate means of dealing with, frustrating and punishing such violations.

Rem. Rev. Stat., § 2382 [P. C. § 8783], makes it a gross misdemeanor for two or more persons to con-

spire to accomplish any unlawful purpose, or to accomplish a lawful purpose in an unlawful manner. Rem. Rev. Stat., § 2384 [P. C. § 8785], provides that any corporation, whether foreign or domestic, that violates any provision of § 2382 shall forfeit every right and franchise to do business in this state.

In *State v. Erickson,* 54 Wash. 472, 103 Pac. 796, a conviction for conspiracy to control the price of milk in the city of Seattle was upheld and affirmed.

So then, if, in fact, the agreement of the respondents constituted a conspiracy to control or fix the price of ice in the city of Spokane, § 2382 furnished a ready means for its punishment and § 2384 furnished an equally ready means for the prevention of its repetition. But with those questions, we are not here concerned.

It may be further conceded that, had the appellant entered into a contract with the Ice Delivery Co., under which he was required to sell at prices fixed by that company, he would not have been bound by the agreement and could not have been compelled to perform it. *American Export Door Corp. v. John A. Gauger Co.,* 154 Wash. 514, 283 Pac. 462. But with that question, likewise, we are not here concerned.

The only question left, then, is whether appellant was entitled to purchase ice from the Ice Delivery Co. for purpose of sale at retail and without the price-fixing restriction. But the appellant is not complaining of that. His complaint does not allege that he made any offer to purchase ice of Ice Delivery Co. for retail purposes. In fact, it does not allege that he made any offer to purchase from that company at all. His complaint is based upon the theory that he has the right to compel respondents to sell him ice, to use as he sees fit, whether for retail or wholesale purposes. He has no such right.

Clause (6) has reference to damages only, and of itself, of course, does not state a cause of action.

We have so far discussed the various parts of the pleading, according to the above enumerated clauses, taken separately. None of them alone states a cause of action. When grouped together, they have no added strength. The pleading shows that, so far as anything was *done* by the manufacturing respondents, there was no legal damage to appellant. What loss he may have suffered from their acts was merely incidental to the result of activities lawfully exercised by those respondents in refusing to sell him ice; the pleading further shows that, so far as the remaining respondents are concerned, whatever unlawful acts, if any, were committed by them, they are not related to, nor made the ground of, appellant's cause of complaint.

The judgment as entered will be affirmed.

BLAKE, HOLCOMB, and MITCHELL, JJ., concur.