[No. 46645. En Banc. June 19, 1980.]

BRIAN LONG, ET AL, *Respondents,* v. CHIROPRACTIC
SOCIETY OF WASHINGTON, *Appellant.*

758

*Gregory J. Dennis* (of *Landerholm, Memovich, Lansverk, Whitesides, Marsh, Wilkinson & Klossner, Inc., P.S.*), for appellants.

*Davies, Pearson, Anderson, Seinfeld, Gadbow, Hayes & Johnson, P.S.*, by *John C. Kouklis* and *John O'Melveny*, for respondents.

HICKS, J.—Plaintiffs Brian Long and United Chiropractors of Washington brought this class action against the Chiropractic Society of Washington, alleging unlawful discrimination and violations of Const. art. 12, § 22, RCW 34.04 and RCW 19.86. The trial court dismissed plaintiffs' (respondents') claim under RCW 19.86, the Consumer Protection Act, but otherwise granted their summary judgment motion without specifying on which of the asserted grounds. Damages were awarded in the amount of $3,745. We accepted certification from the Court of Appeals, Division One, and we affirm the trial court in part and reverse in part.

In the state of Washington, a practicing chiropractor must renew his license annually. A prerequisite of renewal is attendance at an approved symposium. RCW 18.25.070 specifies those who may sponsor relicensing symposia. Plaintiff United was not included among those named. On

its face the statute, as a practical matter, limited the sponsors of relicensing symposia within the state to two associations, Chiropractic Society of Washington (CSW) and Washington Chiropractic Association (WCA).

However, the trial court ruled that RCW 18.25.070 permitted any organization meeting certain objective criteria to sponsor relicensing symposia. This ruling was not challenged on appeal and it is now the law of this case. Plaintiff United appears to be qualified to sponsor a symposium under the trial court's order.

During the period pertinent to this action, both CSW and WCA sponsored relicensing symposia. CSW and WCA reciprocally agreed that members of each could attend the symposium of the other for the same fee charged the sponsoring organization's members.

At the time, CSW members were assessed $300 annual dues, a portion of which was used to defray part of the cost of its symposium. In this instance, CSW at its relicensing symposium fixed the attendance fee for its members at $65. Nonmembers of CSW who were not covered by a reciprocal or other agreement were charged $200 for the privilege of attending.

Plaintiffs (respondents) brought this action charging the fee schedule and the reciprocal arrangement between CSW and WCA were illegal. Allegedly, they violated: (1) Const. art. 12, § 22; (2) RCW 18.25.150 (prohibition of discrimination against chiropractors by the state); (3) equal protection clauses of both state and federal constitutions; (4) RCW 34.04 (administrative procedures act); and (5) RCW 19.86 (Consumer Protection Act).

I

Three of respondents' claims are concerned with whether CSW's arrangement with WCA regarding relicensing symposia involves state action or whether either association acted with state agency status. We hold that there is neither state action nor state agency status prevalent here.

The Washington administrative procedures act, RCW 34.04, mandates state agencies to comply with certain procedural requirements when promulgating rules and otherwise taking action. RCW 18.25.150 prohibits the state or its political subdivisions from discriminating against chiropractors. If CSW's conduct of its relicensing symposium was in fact discriminatory toward them, to prevail under RCW 18.25.150 respondents must establish that state action is involved or that CSW acted with state agency status. This they have not done.

■ Though CSW is a private organization, it is mentioned by name in RCW 18.25.015 and .070. For a statutory reference to confer state agency status upon a private entity, the reference must be construed within the context in which it is made. *Graham v. State Bar Ass'n,* 86 Wn.2d 624, 548 P.2d 310 (1976). Here, RCW 18.25.015 creates a 3–member board of chiropractic examiners and provides that its members be appointed by the Governor from lists of nominees submitted by CSW and WCA. RCW 18.25.070 provides, *inter alia,* for approved relicensing symposia for licensed chiropractors practicing in Washington. CSW is listed among those authorized to sponsor or conduct a relicensing symposium that is deemed board approved. This court in *United Chiropractors of Washington, Inc. v. State,* 90 Wn.2d 1, 8, 578 P.2d 38 (1978), disposed of the appointive power of CSW and WCA under RCW 18.25.015 by declaring that portion of the section unconstitutional on due process grounds. The trial court, by its construction of RCW 18.25.070 in this case, has obviated any claim of state action permitting monopoly in conducting relicensing symposia.

■ Respondents' assertion that they have suffered a violation of equal protection guaranties is dependent upon a finding of state involvement. The equal protection clauses of this state's constitution and the federal constitution are substantially identical mandates. *State v. Perrigoue,* 81 Wn.2d 640, 503 P.2d 1063 (1972). We confine our discussion to the federal provision.

In relevant part, U.S. Const. amend. 14, § 1 provides:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any state* deprive any person of life, liberty, or property, without due process of law; nor *deny to any person within its jurisdiction the equal protection of the laws.*

(Italics ours.)

■■ The Supreme Court said in *United States v. Stanley,* 109 U.S. 3, 11, 27 L. Ed. 835, 3 S. Ct. 18 (1883):

It is State action of a particular character that is pro-hibited. Individual invasion of individual rights is not the subject–matter of the amendment.

In *Kennebec, Inc. v. Bank of the West,* 88 Wn.2d 718, 721, 565 P.2d 812 (1977), we noted:

Over the course of a century of case–by–case applica-tion, the Supreme Court has developed the "state action" doctrine. As the fundamental purpose of the Fourteenth Amendment was the eradication of slavery and racial discrimination, the development and expansion of state action doctrine has occurred primarily under the equal protection clause of the amendment in cases involving racial discrimination. The court has, in the course of time, enlarged state action to encompass "private" con-duct under certain circumstances. But the state must be involved, and the test is *significant state involvement. Moose Lodge 107 v. Irvis,* 407 U.S. 163, 173, 32 L. Ed. 2d 627, 92 S. Ct. 1965 (1972); *Reitman v. Mulkey,* 387 U.S. 369, 380, 18 L. Ed. 2d 830, 87 S. Ct. 1627 (1967).

Absent significant state action, a private organization is not amenable to an equal protection complaint regardless of its discrimination toward others.

*Aasum v. Good Samaritan Hosp.,* 395 F. Supp. 363, 367 (D. Ore. 1975), provides a test that we utilize in the instant case. In deciding a hospital was a private institution, the court applied a 3–prong test: (1) Was the state's involve-ment with the institution significant? (2) Is the state involved, not simply with some activity of the institution, but with the activity that caused the injury (the so–called nexus requirement)? and (3) Did the state's involvement

aid, encourage or connote approval of the complained activity?

Here, the fact that CSW is mentioned in RCW 18.25.015 and .070, even if our holding in *United Chiropractors* is disregarded, is not "significant" state involvement in CSW's activities. These sections refer to CSW as an entity authorized to conduct approved relicensing symposia and to submit a list of nominees to the Governor. There is no "nexus" between CSW's relicensing symposium fee arrangement with WCA and the substantive content of the referenced sections of the statute. The sections do not aid, encourage or approve the fee schedule for attendance at the symposium or the reciprocal agreement in question. Consequently, we conclude that the state is not an active participant in the conduct of which respondents complain.

Finally, we recognize a constitutional distinction between active and passive state involvement. Active involvement may invoke constitutional protection; passive involvement does not. Simple enactment of a statute permitting, but not requiring, private conduct with no further significant participation by the state is not state action. *Kennebec, Inc. v. Bank of the West, supra.*

Here, RCW 18.25.070 permits but does not require CSW to conduct relicensing symposia. RCW 18.25.015 is also permissive in the sense that there is no legislative requirement that CSW submit nominees to the Governor. The constitutionally infirm portion of the statute restricting the Governor to appoint from the list has been declared invalid. *United Chiropractors v. State, supra.*

We hold there is no state action involved in the controversy before us nor does CSW act with state agency status either in conducting a relicensing symposium or in submitting nomination lists to the Governor. Absent significant state action or state agency status, the claims of equal protection and statutory violation fail.

## II

We turn next to respondents' contention that CSW's conduct contravenes Const. art. 12, § 22. Const. art. 12, § 22 provides:

> Monopolies and trusts shall never be allowed in this state, and no incorporated company, copartnership, or association of persons in this state shall directly or indirectly combine or make any contract with any other incorporated company, foreign or domestic, through their stockholders, or the trustees or assignees of such stockholders, or with any copartnership or association of persons, or in any manner whatever for the purpose of fixing the price or limiting the production or regulating the transportation of any product or commodity. The legislature shall pass laws for the enforcement of this section by adequate penalties, and in case of incorporated companies, if necessary for that purpose, may declare a forfeiture of their franchises.

Respondents argue the arrangement between CSW and WCA regarding relicensing symposium attendance fee schedules constitutes an unlawful monopoly and illegal price fixing. We disagree.

 Concern for the public interest is the cornerstone upon which the prohibition of monopolies rests. In the relatively early case of *Fisher Flouring Mills Co. v. Swanson*, 76 Wash. 649, 137 P. 144 (1913), this court recognized that not all restraints on competition are repugnant to the interests of the public. Each case must be examined in light of the significant interest of all parties, including the interest of the public. Whenever a monopoly is found to exist, a contract fixing retail prices is void as essentially injurious to the public. *Fisher*, at 657. *Accord, Powell v. Graham*, 183 Wash. 452, 48 P.2d 952 (1935).

The vague concerns for protection of the public were crystalized in *Group Health Coop. of Puget Sound v. King County Medical Soc'y*, 39 Wn.2d 586, 237 P.2d 737 (1951). There, the court stated a specific test for the determination of unlawful monopolies. The elements are (1) a contract, combination or other arrangement between two or more

corporations, copartnerships or associations, (2) which relates to a product or commodity, and (3) the purpose of the contract, combination or association must be to fix prices, limit production or regulate the transportation of such product or commodity. Additionally, the monopolistic character of a combination is not to be tested by what has been done in the past, but by what may be done in the future. *Group Health,* at 641.

From this test it is apparent article 12, section 22 does not condemn price fixing *per se.* The practice is susceptible to constitutional challenge only when price fixing is brought about in connection with a monopoly and results in an unreasonable restraint upon competition. *Group Health,* at 639.

Applying the test to CSW's reciprocal agreement with WCA regarding relicensing symposium attendance fees, we find no constitutional violation. While there was an agreement between CSW and WCA, and sponsorship of relicensing symposia may be classified as a "commodity" within the meaning of article 12, section 22 (*Group Health,* at 637), evidence of a purpose to fix prices or that fixed symposium prices resulted is nonexistent.

The CSW–WCA agreement was one of mutual convenience. Members of each organization were permitted to attend the other's relicensing symposium for the same attendance fee as the sponsor's members paid. Each organization was free to set its attendance fee at whatever level it felt appropriate. Chiropractors not members of either CSW or WCA were charged $200 to attend. This charge represented a proportional payment toward the cost of the symposium. Contribution from CSW members came from dues of $300 plus a $65 attendance fee. We find no threat to the public interest in such an arrangement. *Powell v. Graham, supra.*

We are buttressed in this conclusion by the trial court's construction of RCW 18.25.070. Under that interpretation, sponsorship of relicensing symposia is not limited to the

organizations specifically named in the statute. Finally, we note the language of *Group Health* at pages 640–41:

> [T]he monopolistic character of a combination is not to be tested by what has been done under it, but what may be done under it; "not by its performance, but by its powers of performance when fully executed."

(Citations omitted.) Presumably, United may now sponsor relicensing symposia under RCW 18.25.070. It may fix the charges for attendance and admit whom it will. We conclude there is no monopoly or price fixing in the present case.

### III

Respondents' final contention is that they are entitled to attorney fees and treble damages under the Consumer Protection Act. They seek to bring themselves under the act by asserting that CSW's actions constitute illegal price fixing and are unfair methods of competition and unlawful restraints of trade in violation of RCW 19.86.020 and .030. They also invoke RCW 19.86.040 which prohibits monopolies. The trial court dismissed this portion of respondents' case as not stating a claim under RCW 19.86. On this issue we concur with the trial court. Respondents' contentions were all considered and determined adversely to them in the discussion above.

Accordingly, the trial court is affirmed on its dismissal of the asserted claim under RCW 19.86, and the summary judgment in favor of respondents is reversed and remanded with directions to dismiss.

It is so ordered.

ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., and HAMILTON, J. Pro Tem., concur.