# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SALLY VON ERFFA,

               Respondent,

     v.

KURT PRASSE,

               Appellant.

)
)
)
)
)
)
)
)
)
)
)

No. 77986-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: July 23, 2018

APPELWICK, C.J. — Prasse appeals a domestic violence protection order in favor of Von Erffa and against Prasse. Prasse argues 18 grounds for reversal, including that the protection order entered against him was an improper modification to the parties' parenting plan. We remand for further factual findings as to the child's residential schedule. We affirm in all other respects.

## FACTS

Sally Von Erffa and Kurt Prasse were married and had a child together. They dissolved their marriage in 2015. Their parenting plan generally granted 50 percent residential time to each parent.

On December 4, 2017, Von Erffa petitioned for a protection order. She alleged that Prasse had personally delivered a two paragraph threatening letter to her. The letter's first paragraph expressed anger over allowing the child to eat food out of plastic containers and "pesticide containing foods," and stated that he

was collecting "every bit of negative information" about Von Erffa. The more troubling second paragraph stated,

> You have closed off most avenues of life enjoyment for me but I have two things left, I live for:
>
> 1) redemption by taking revenge on you for having permanently harmed me psychologically and crippled my life and bereft me of almost all joys I was capable experiencing [sic] before I met you and for you having removed my son from half of my life and for having split his into two places. It just won't be that I pay the price for your actions while you escape unscathed. Obviously he will have to be a teenager before I can go to jail for you, but my detailed plot is set for summer 2029 and I just will have to pre-live it in my dreams until then, as I often am. (Of course my real revenge will be when [our son] inherits the many diaries and hours of video diaries I recorded. He will hate you until the rest of your life, no doubt)
>
> 2) to protect my son. This moral obligation overrides everything and anything or anyone standing in the way of this objective will be battled [sic] and obliterated to the fullest extent of my capacities.

And, she provided a printout from a 2015 website posting[1] purportedly authored by Prasse that stated,

> If I dreamt they were dreams of violence towards Sally and her family and other people I knew. Or dreams of falling without end. In my irrational state I contemplated murder and considered violence (having your child taken registers in the oldest part of the brain my therapist said) and abduction. But my son was too young to be separated from his mother permanently.

Prasse also personally handed a note to Von Erffa on December 2, that stated, "I will not let you leave the state for christmast [sic]."

A commissioner issued a temporary protection order on December 4, 2017, and scheduled a hearing for December 28, 2017. Following that December 28

---

[1] It is not clear whether Prasse posted this before or after the 2015 parenting plan was entered.

hearing, the commissioner issued a protection order. That order restrained Prasse from contact with Von Erffa or the child, except for twice weekly supervised visitations.

Prasse moved for revision. The trial court denied that motion. Prasse appeals.

## DISCUSSION

I. Change to Parenting Plan

Prasse argues that the protection order violated RCW 26.09.260 by improperly modifying the child's residential schedule without proper findings.

A decision to grant or deny a domestic violence protection order is reviewed for an abuse of discretion. Maldonado v. Maldonado, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). And, rulings dealing with the provisions of a parenting plan are generally reviewed for abuse of discretion. In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Id. at 46-47.

When a court issues a domestic violence protection order, residential provisions regarding minor children of the parties must be made in accordance with chapter 26.09 RCW. RCW 26.50.060(1)(d). Here, the domestic violence protection order altered the existing residential schedule of the child.

A modification of a parenting plan occurs when a party's rights are either extended beyond or reduced from those originally intended. In re Marriage of Christel, 101 Wn. App. 13, 22, 1 P.3d 600 (2000). A court may modify a parenting

3

plan if "a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child." RCW 26.09.260(1). Applying this standard, courts must retain the residential schedule within a parenting plan unless:

> (a) The parents agree to the modification;
>
> (b) The child has been integrated into the family of the petitioner with the consent of the other parent in substantial deviation from the parenting plan;
>
> (c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child; or
>
> (d) The court has found the nonmoving parent in contempt of court at least twice within three years because the parent failed to comply with the residential time provisions in the court-ordered parenting plan, or the parent has been convicted of custodial interference in the first or second degree under RCW 9A.40.060 or 9A.40.070.

RCW 26.09.260(2). Here, the only justification for a modification to the parenting plan could be subsection (c), based on the allegations about Prasse's behavior.

Protections against domestic violence are a serious concern. However, "there is no evidence that the Legislature intended to allow protection orders to function as de facto modifications of permanent parenting plans." In re Marriage of Barone, 100 Wn. App. 241, 247, 996 P.2d 654 (2000). The legislature has created barriers to modifications of parenting plans. Id. at 247-48. "For example, '[c]ustodial changes are viewed as highly disruptive to children, and there is a strong presumption in favor of custodial continuity and against modification.'" Id.

4

at 247 (alteration in original) (quoting In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993)). And, failure by the trial court to make findings that reflect the application of each relevant factor is error. In re Marriage of Shryock, 76 Wn. App. 848, 852, 888 P.2d 750 (1995).

Here, the threats alleged by Von Erffa since the parenting plan was entered were against her personally. The writings of Prasse on which she relied do not appear to threaten the child. The protection order restrained Prasse from contact with Von Erffa or the child, except for twice weekly supervised visitations. Neither the commissioner nor the trial court made findings as to the need to protect the child. Consequently, the orders do not reflect a factual basis for modification of residential schedule in the parenting plan.

The protection order stated that the change in the existing residential schedule for the child would be superseded by subsequent modification to the parenting plan.[2] However, nothing within the protection order required a modification be pursued. Given the nature of the restrictions on Prasse, Von Erffa would not have an incentive to seek a modification of them. Prasse would be unlikely to be able to carry his burden establishing a change of circumstances of the nonmoving party or the child. See RCW 26.09.260(1). As a result, despite the lack of an identification of a factual basis for an order of protection for the child or for imposing residential limitations, a danger exists that the changed residential provisions would become a de facto permanent modification of the parenting plan.

---

[2] The order on revision also stated that the protection order "may be modified to allow contact with child per family court order."

5

Based on the record before us, we cannot say that there was a substantial change in circumstances that would warrant such a modification of the parenting plan consistent with RCW 26.09.260(2)(c).

We remand for the findings necessary to support application of the protection order to the child and to support the changes in the residential schedule provided for in the parenting plan; or, absent that, amendment of those provisions of the protection order. However, if subsequent to the filing of this appeal, a modification of the residential schedule has been entered, the trial court need not make further findings in this matter.

## II. Exclusionary Rule

Next, Prasse argues that Von Erffa used Prasse's therapeutic diaries as evidence in violation of the exclusionary rule. But, "[t]he exclusionary rule does not apply to the acts of private individuals." State v. Smith, 110 Wn.2d 658, 666, 756 P.2d 722 (1988). Prasse alleges that Von Erffa illegally accessed these private documents, not that any state actor wrongfully took them. Therefore, this argument fails.

## III. Statutory Meaning of "Threat"

He next argues that the commissioner erred by concluding that documents authored by him in 2015 were "threats" under RCW 9A.04.110. He argues that these were private documents, not written to the mother, and thus cannot qualify as threats against the mother. Prasse cites to no portion of the record where he raised this argument below. Under RAP 2.5(a), we need not address arguments

raised for the first time on appeal. We therefore decline to address this argument further.

### IV. Trial Court's Alleged Psychological Conclusions

Prasse next contends that the commissioner improperly drew psychological conclusions, which should be the subject of expert testimony. But, Prasse also did not raise this argument below. Under RAP 2.5(a), we need not address it.

### V. Weight of Evidence

Issues 4, 5, 6, 7, 8, 10, 11, 12,[4] and 15 raised by Prasse all generally go to the weight or sufficiency of the evidence. Prasse conceptualizes each issue in a slightly different way. For example, in issue 5, Prasse points to a "discrepancy that was roundly ignored by the commissioner." In issue 15, Prasse argues that "this ruling seems completely unwarranted with the circumstances of this case," and "[t]he commissioner erred by making a ruling not in the best interests of the child."

We review the trial court's decision to grant or deny a protection order for an abuse of discretion. Hecker v. Cortinas, 110 Wn. App. 865, 869, 43 P.3d 50 (2002). We determine whether the trial court's findings are supported by substantial evidence in the record, and, if so, whether those findings support the conclusions of law. Scott v. Trans-Sys., Inc., 148 Wn.2d 701, 707-08, 64 P.3d 1

---

[4] In this section of his brief, Prasse also refers to witnesses that he claims were wrongfully excluded. It appears that the court told Prasse that it did not believe it was necessary to hear from two witnesses that Prasse had brought to the hearing, because it had reviewed their declarations. Although Prasse had brought those witnesses to the hearing, he did not make any objection to the decision. Given this lack of objection, and minimal discussion in his brief, we decline to address this argument further. RAP 2.5(a); Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (declining to consider an inadequately briefed argument).

7

(2003). Substantial evidence is evidence that is sufficient to persuade a fair-minded, rational person of the truth of the asserted premise. Pilcher v. Dep't of Revenue, 112 Wn. App. 428, 435, 49 P.3d 947 (2002).

A petition for a domestic violence protection order must allege "the existence of domestic violence" and must be accompanied by an affidavit under oath that states specific facts and circumstances supporting relief. RCW 26.50.030(1). "Domestic violence" is defined in part as "[p]hysical harm, bodily injury or assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members." RCW 26.50.010(3)(a).

Here, Von Erffa received a letter in which Prasse discussed "redemption by taking revenge on you," stated that anyone standing in his way "will be battled and obliterated," and stated that "I can go to jail for you." Von Erffa stated that Prasse had delivered the letter to her in-person. She also testified that she has been in fear for her safety ever since, and that she was scared to stay in her own home. Substantial evidence supports the trial court's decision to issue the protection order. And, to the extent that Prasse believes that the trial court improperly weighed the evidence, or ignored holes in Von Erffa's story, we defer to the trial court's determinations on the persuasiveness of the evidence, witness credibility, and conflicting testimony. State v. Ainslie, 103 Wn. App. 1, 6, 11 P.3d 318 (2000).

The trial court did not abuse its discretion in determining that a protection order was warranted.

VI.     History of Domestic Violence

Prasse next argues that the commissioner erred in finding a history of domestic violence, because it relied on the prior issuance of a 2015 no-contact order, rather than a protection order. RCW 26.10.160(2)(a)(iii) states that a court may limit a parent's visitation with a child if the court finds a history of domestic violence. Prasse argues that a no-contact order is insufficient to show a history of domestic violence, because it is different from a protection order. But, nothing in the record suggests that the trial court found a history of domestic violence under RCW 26.10.160(2)(a)(iii). Rather, its decision was based on a credible threat to the mother's safety. Therefore, this argument is not grounds for reversal.

VII.    Equal Protection

Prasse argues that the commissioner violated the equal protection clause. But, nothing in the record suggests that Prasse raised the equal protection clause below. An exception to RAP 2.5(a) instructs that a party may raise for the first time on appeal a manifest error affecting a constitutional right. In order to be "manifest," the party "must show that the asserted error had practical and identifiable consequences at trial. State v. Grimes, 165 Wn. App. 172, 186-87, 267 P.3d 454 (2011). Prasse argues that, due to this error, "no time at all was allotted during the hearing to examine the father's character as a parent." Prasse also contends that he was denied equal protection rights based on his background growing up in foreign countries. But, absent significant state action, a claim of equal protection violation fails. See Long v. Chiropractic Soc'y of Wash., 93 Wn.2d 757, 761, 613 P.2d 124 (1980).

9

Prasse's equal protection argument is that Von Erffa portrayed the evidence against Prasse in a discriminatory light, not that any government actor discriminated against him in any way. Even so, to the extent that the trial court may have wrongfully denied him the ability to present his case, Prasse was allowed to testify at the hearing. He was free to give testimony about his parenting skills and dedication. He did not object when the commissioner told Prasse that it did not find it necessary to hear his witnesses testify, because it already had reviewed their "well written" declarations. He was given a hearing before a trial court on revision. He therefore fails to establish that this alleged error was manifest. He points to no portion of the record where his nationality was invoked in the proceedings.

We find no equal protection violation.

VIII. Temporary Protection Order

Prasse next argues that the commissioner erred, because the temporary protection order was in place for more than 14 days. Under RCW 26.50.070(4), a court may issue ex parte a temporary protection order for a fixed period not to exceed 14 days. It appears that the commissioner authorized the temporary order to be in effect beginning December 4, 2017, until the end of the next hearing, which did not occur until December 28, 2017. But, Prasse fails to identify how this error bears on the validity of the permanent order that is the subject of this appeal.

IX. "Flawed Process"

Prasse's final argument is that "the trial court rulings were flawed because they were based on a flawed process of finding facts by the commissioner." But,

he provides no further articulation of how the process below was flawed, and cites no authority in support of this argument. We decline to address it further. See Norcon, 161 Wn. App. at 486 (declining to consider an inadequately briefed argument).

X.    Attorney Fees

Von Erffa requests attorney fees on appeal. Under RCW 26.09.140, an appellate court may award fees in its discretion. In determining whether to award attorney fees on appeal, we "examine the arguable merit of the issues on appeal and the financial resources of the respective parties." In re Marriage of Booth, 114 Wn.2d 772, 779-80, 791 P.2d 519, 523 (1990). We decline to award fees to Von Erffa.

We remand for further proceedings relative to the application of the order to the child. We affirm in all other respects.

WE CONCUR:

11